# Giltinan *versus* Strong.

1. G. told T. that he wanted to rent her house 111 Strawberry street for a friend and would become surety for the rent. Shortly after M. went into the house, G. said he had put M. there. G. and M. were together afterwards when this paper was prepared and signed by G.: "April 15th 1866. I hereby become surety for rent of house 111 Strawberry, at $1200 per annum, payable monthly from this date." In an action of assumpsit against G. charging him directly for the rent, *Held*, that the paper was evidence.

2. Parol evidence is admissible to prove the consideration of the original liability in an action on a written promise to pay the debt of another.

3. S. recovered judgment against M. for the rent. *Held*, that the record of the judgment was not evidence in an action against G. on his promise to be surety.

4. "Parties" includes all directly interested in the subject-matter, who have a right to defend or control the proceeding and appeal.

5. Those not having these rights are strangers.

6. A surety in an independent instrument is no party who could appear and control an action against his principal, or appeal.

7. Privity is mutual or successive relationship to the same right of property.

8. The privity of the surety with his principal is in the contract not in the action.

9. The surety is bound for the acts or omissions of the principal for which he is pledged, and in this respect only the principal represents him.

10. This is the criterion of the competency of the principal's declarations or admissions.

11. In official bonds or bonds of indemnity the surety submits himself to the acts of the principal and to the judgment as a legal consequence falling within the scope of the suretyship.

[Giltinan *v.* Strong.]

February 14th 1870. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 203, to July Term 1869.

Catharine Strong brought an action of assumpsit in the District Court of Philadelphia, to December Term 1866, against David Giltinan. The first count of the declaration was, in consideration that the plaintiff at the defendant's request, would let to George R. Maguire a house for one year, at $1200 per annum, the defendant in writing promised that he would pay the rent if Maguire did not; that the plaintiff rented to Maguire, who did not pay. Second count was, that if the plaintiff would let the house to Maguire, the defendant promised to pay the rent; also the common counts.

On the trial, before Hare, P. J., the plaintiff proved by one of her agents that the defendant said that he wanted the plaintiff's house, No. 111 Strawberry street, for a friend of his; that Maguire went into the possession of the plaintiff's house; the defendant told witness that he had put Maguire there.

The plaintiff then offered in evidence the following paper :—

" April 15th 1866. I hereby become surety for rent of house 111 Strawberry, at $1200 per annum, payable monthly from this date. " DAVID GILTINAN."

The defendant objected to the offer; it was received, and a bill of exceptions sealed.

Another witness testified as to the signing of the paper, and that in two or three days afterwards Maguire moved into the house and continued in it until December 1866.

The defendant gave evidence by Maguire, that in July he had tendered to the plaintiff a surrender of the house, she said he would be satisfied with what he could pay, she would not hold him to $100 per month; the defendant then said he would no longer be responsible for the rent, and plaintiff said she would not look to him. In November witness said he would stay no longer; plaintiff said she was just as well pleased, and he sent her the key. He testified that he had paid plaintiff $420 up to September 26th 1866.

The plaintiff in rebuttal offered in evidence the record of a suit by her against Maguire for the same rent, in which there was judgment against him for $505.93; an execution issued, and return " nulla bona."

The defendant objected to the offer; it was received and a bill of exceptions sealed.

The defendant's points were :—

1. The paper offered in evidence by the plaintiff is not sufficient to charge the defendant with Maguire's debt.

[Giltinan *v.* Strong.]

2. The evidence is not sufficient to maintain the action, and the verdict should be for the defendant.

3. The record of the suit and judgment against Maguire is not evidence to establish the debt as against the defendant in this case.

The court declined to charge as requested in defendant's points. The verdict was for the plaintiff for $443.10.

The defendant took a writ of error, and assigned for error the refusal of his points and the admission of the evidence objected to.

*R. P. White* (with whom was *George H. Earle*), for plaintiff in error.—A surety cannot be bound by a judgment in a suit in which he could not be heard, and the record against Maguire would not be evidence against Giltinan; it was strictly *res inter alios :* Gilbert's Law of Ev. 29 ; Sharswood's Starkie on Ev., § 319 ; 1 Taylor on Ev., § 710 : 2 Id. 1429 ; 1 Phillips on Ev. 526 ; 2 Id. 133 ; 1 Greenl. on Ev. 527, 538 ; Duchess of Kingston's Case, 20 How. State Tr. 35 ; King *v.* Norman, 4 C. B. 884 ; Powell *v.* Layton, 2 N. R. 371 ; Griffin *v.* Brown, 2 Pick. 304 ; Pritchard *v.* Hitchcock, 6 M. & G. 151 ; Kıp *v.* Brigham, 6 Johns. 158 ; Case *v.* Reeves, 14 Id. 79, 81 ; Maybe *v.* Avery, 18 Id. 352 ; Clark *v.* Montgomery, 2 Barb. 464 ; Douglass *v.* Howland, 24 Wend. 35 ; Coun *v.* Osgood, 15 Barb. 583 ; Snell *v.* Allen, 1 Swan (Tenn.) 208 ; Payne *v.* Coates, 1 Munf. 373 ; Jackson *v.* Veddes, 3 Johns. 8 ; Twambly *v.* Henley, 4 Mass. 441, 442 ; Wood *v.* Stephen, 1 S. & R. 175 ; Johnson *v.* Bowen, 1 Wash. R. 187 ; Cowles *v.* Harts, 3 Conn. 516 ; Sturgis *v.* Beach, 1 Id. 507 ; Turpin *v.* Thomas, 2 Hen. & Munf. 139, 147 ; Fletcher *v.* Jackson, 8 Vermt. 588 ; Respublica *v.* Davis, 3 Yeates 128 ; Camack *v.* Com'th., 5 Binn. 184 ; Moores' Appeals, 10 Casey 411.

The declarations of a principal to be evidence against a surety, must be made at the time and as part of the transaction in which the liability is incurred : Evans *v.* Bartlett, 5 Esp. 26 ; Smith *v.* Whittingham, 6 C. & P. 78 ; Cullen *v.* Newlin, Manning's Dig. N. P. 137 ; More *v.* McCullough, 5 Hill 131 ; Jackson *v.* Griswold, 4 Id. 522 ; The King *v.* Norman, 4 C. B. 883 ; Moores' Appeals, 10 Casey 411.    The agreement was a suretyship : Allen *v.* Hubert, 13 Wright 260 ; Marburger *v.* Potts, 4 Harris 9.

*D. W. Sellers* and *C. D. Freeman*, for defendant in error.— In a written promise to pay the undertaking of another, the consideration of the original undertaking need not appear : Leonard *v.* Vildenburgh, 8 John R. 29 ; Shively *v.* Black, 9 Wright 345.

The opinion of the court was delivered, March 3d 1870, by AGNEW, J.—The memorandum signed by David Giltinan for

[Giltinan *v.* Strong.]

the payment of the rent of the house in Strawberry street, related directly to the subject-matter of the action, and was not irrelevant. There being no special objection to its effect that became a matter of instruction of the court to the jury.

Under the evidence, we cannot say the writing was not sufficient to support the action. The first count in the declaration charges a direct promise of the defendant to pay the rent, and there was evidence to go to the jury in support of it. The agent of Mrs. Strong testified that the defendant asked him whether there was a tenant in the house, and said he wanted it for a friend. Both Giltinan, the defendant, and Maguire, were together when the memorandum was signed at Mrs Strong's. A few days afterwards Maguire went into possession, and Giltinan told the witness that he had put Maguire there; the evidence tended to show that the lease to Maguire was made at Giltinan's request. The language of the paper is not inconsistent with a primary liability on the part of Giltinan: "I hereby become surety for the rent of house in Strawberry St., at $1200 per annum, payable monthly from this date." No person is named or referred to as the principal, nor is the rent stated to be that of another. The language can as well apply to a primary contract of Giltinan for a lease made at his request, as to a promise to pay the debt of another. Though the word surety is used, it is obvious from the absence of any other name or reference to the debt of any other person, that the writing is not necessarily a promise to pay the debt of another. It needs parol evidence to show that it is. The evidence of direct liability carried the writing properly to the jury. Arnold *v.* Stedman, 9 Wright 186, is sufficient authority for this; see also Paul *v.* Stackhouse, 2 Wright 305; Malone *v.* Keenan, 8 Id. 107. If parol evidence to prove consideration be needed, it can be adduced: Schively *v.* Black, 9 Id. 345.

But we think the court erred in holding that the record of the judgment against Maguire was competent evidence against Giltinan. If the liability is direct and primary, it is clear this is so, and if the writing is viewed as a mere undertaking of suretyship, still it was error; Giltinan was no party to that action, had no notice to defend it, and could not be brought into defence of it by the plaintiff. The plaintiff's remedy against him could be only on his own promise. A surety may give notice to his principal who owes him this duty to defend him, but it would be a novelty if the principal could call in his surety who owes no such duty, to defend him. Giltinan was therefore in no sense either a party or privy to that action. Under the term *parties* (says Mr. Greenleaf, in his Law of Evidence, § 524), "the law includes all who were directly interested in the subject-matter, and had a right to make defence or to control the proceeding, and to appeal from the judgment. The right involves also the right to adduce testi-

[Giltinan *v.* Strong.]

mony, and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded as *strangers* to the cause." A surety in a separate and independent instrument is no party who could appear and control the separate action against his principal or appeal from the judgment. Nor is there a legal privity. *Privity*, says Mr. Greenleaf, § 189, denotes mutual or successive relationship to the same right of property. In none of the classes enumerated, as in estate, in blood, and in law, does the case of a surety fall in reference to a creditor's *action*. It is the right to represent, which creates privity in law as between ancestor and heir, decedent and administrator, &c., but clearly the principal, in an action against himself alone, cannot represent his surety. If he could, then he could bind his surety for an extinguished or paid debt by a confession or a default. The privity of the surety with his principal is in the contract alone and not in the *action*. For the acts or omissions of the principal to which the surety pledges himself in his contract, he is bound, and it is only in this respect the principal represents his surety. This is the criterion of the competency of the principal's declarations or admissions. Where these form a part of the acts or omissions of the principal for which the surety is bound, they constitute portions of the *res gestæ*, and may be evidence against the surety. But beyond this line clearly the surety cannot be affected by the acts or admissions of his principal, for he is not represented by him: 1 Greenleaf's Ev., § 187. The acts or omissions, or admissions of the principal in an action at law against himself, clearly do not represent the surety in any wise. The liability of the surety is only for the unpaid rent in this case. Now clearly, the principal cannot, by any act, admission or omission in such action, increase the surety's liability beyond that extent. Nor are the interests of the principal and surety always identical. If the interest of the principal induce him to withdraw a payment made to the rent and apply it to another debt, the judgment against the principal would not represent the true balance against the surety. In the very case before us the payments proved would reduce the judgment against the principal more than one hundred dollars. If we analyze the judgment we discover that it cannot affect the surety. It speaks simply the voice of the evidence, and is but the determination of the tribunal of the result of the evidence. But clearly the principal does not represent his surety in marshalling and controlling the evidence. His interest, we have seen, may be different from that of his surety, and induce him to withhold evidence to which the surety would be entitled.

No argument can be drawn from the cases founded on official bonds, bonds of indemnity, &c. They arise from the terms of the bond, or terms of the indemnity, whereby the surety submits

[Giltinan v. Strong.]

himself to the acts of the principal and to the judgment, as itself a legal consequence, falling within the scope of the suretyship. Such are the cases of Masser v. Strickland, 17 S. & R. 354; Musselman v. Commonwealth, 7 Barr 240; Commonwealth v. Evans, 1 Watts 437; and others of similar character. The dissenting opinion of Gibson, J., in Masser v. Strickland, while ineffectual against the peculiar terms of a constable's bond, is conclusive as an argument against the competency of the judgment as evidence in an ordinary case of suretyship. If we look for decisions more germane to the present case we shall find them in Cannuke v. Commonwealth, 5 Binn. 184; Moore's Appeal, 10 Casey 411; see also 1 Greenleaf, §§ 522, 523, 524.

We think the court erred, therefore, in admitting the judgment against Maguire as competent evidence against Giltinan, of the sum due upon the rent.

Judgment reversed, and a <em>venire de novo</em> awarded.