## Thommen v. Wolfe et al.

*M. A. Coyne* and *C. S. Wagoner*, for plaintiff.
*William D. Harkins* and *Joseph L. McAleer*, for defendants.

MACNEILLE, J., April 23, 1930. — The plaintiff in this case is seeking to recover from the defendants as executors and trustees of John Thommen, deceased, the sum of $3100, on an alleged contract of suretyship made by the deceased several years before his death.

The written contract on which the suit is based is not in dispute. The principal contract was drawn up between the plaintiff and Thommen's, Inc., a Pennsylvania corporation, and provided that, whereas the plaintiff had previously conducted a catering business which she had assigned to the corporation, and whereas the parties to the principal contract desired to guarantee the corporation against any future competition by the plaintiff, the plaintiff should not enter into the catering business in Philadelphia, and she should

turn over to the corporation all orders that she received. In consideration of the obligations assumed by her, Thommen's, Inc., agreed to pay her the sum of $5000 per year in weekly instalments, beginning with Nov. 1, 1921. The agreement further provided that if Mrs. Thommen was to remarry, the annual payments were to be reduced to $2500 per year, and that the payments should continue during the life of Mrs. Thommen. The agreement was signed by Thommen's, Inc., and by the plaintiff, Bertha Thommen.

On this contract was endorsed the following writing, which is the basis of the instant suit: "Philadelphia, June 11, 1921. I hereby guarantee the fulfillment of the within agreement. John Thommen [Seal]."

Prior to bringing the suit in this court, the plaintiff had sued Thommen's, Inc., on the principal contract in the Court of Common Pleas No. 5, as of September Term, 1926, No. 10226, which trial resulted in a verdict for the plaintiff in the sum of $724.01, and from this suit an appeal was taken to the Superior Court, and the Superior Court affirmed the judgment. (Thommen v. Thommen's, Inc., 95 Pa. Superior Ct. 17.)

At the trial of this case, the plaintiff offered in evidence the record of the case in the Court of Common Pleas No. 5, and of the appellate court on the principal contract, for the purpose of showing that there had been a judgment for the plaintiff; there were also offered in evidence the pleadings in the former trial, for the purpose of showing that the issues involved in the case at bar and at the prior suit on the principal contract were the same. The record of the prior suit also indicated that the defendants in the instant suit had been sued jointly with Thommen's, Inc., in the prior suit, but, by agreement of counsel, were permitted to withdraw as defendants from the prior suit; also, that counsel for the defendants in the instant case represented all the original defendants in the prior suit, and that Walter C. Harris, an official of the Aldine Trust Company, one of the defendants in this case, testified for the defendant in the prior case. That the surety contract endorsed on the principal contract was signed by John Thommen was admitted. There was also testimony produced that the plaintiff has not engaged in any business since June 11, 1921. That summarizes all the testimony that was produced in this case on behalf of the plaintiff. The plaintiff then rested, and the defendant produced no testimony. At the conclusion of the case, a calculation was handed up by the plaintiff, without objection on the part of the defendant, showing $3100 due the plaintiff, and the court directed a verdict for the plaintiff in this amount. A point for binding instructions was submitted by the defendant, which was refused, and a verdict for plaintiff resulted. Defendant has filed a motion for new trial and for judgment *non obstante veredicto*.

This case presents two problems. In the first place, the contract of suretyship on which this suit is based is so ambiguous as to make any interpretation of it a mere guess. The decedent's endorsement reads: "I hereby guarantee fulfillment of the within agreement." Immediately the question presents itself as to whose fulfillment the decedent is guaranteeing. An examination of the principal contract itself throws absolutely no light on the subject. There are two parties to the principal contract, each one of which is agreeing to a "fulfillment." John Thommen was the president of Thommen's, Inc., one of the parties to the contract, and was the husband of Bertha Thommen, the other party to the contract, and whether he intended to become surety for his wife or his corporation, or both, it is absolutely impossible to determine from the principal contract or from the alleged contract of suretyship. The record of this case is absolutely devoid of any testimony which will help the solution of the problem, as all we have is a contract.

In the case of Little Manuf. Co. *v.* Lipschutz, 87 Pa. Superior Ct. 102, it was held: "Whenever a plaintiff seeks to make one liable for the debt of another, the case must be clearly proved, and every ambiguity in the evidence weighs in favor of the defendant: Kellogg *v.* Stockton & Fuller, 29 Pa. 460. In such a case, the law is well settled that the evidence of the promise to pay the debt of another must be clear and explicit and there should be no room for doubt: Unangst *v.* Hibler, 26 Pa. 150."

That a contract of suretyship must be strictly construed in favor of the surety and that nothing can be added to it by implication is a well-settled principle of law.

Whether parol evidence would have reduced the whole contract to parol and made it unenforceable (Paturzo *v.* Ferguson et al., 280 Pa. 379; Safe Deposit and Trust Co. *v.* Diamond Coal and Coke Co., 234 Pa. 100) or not (Title G. & S. Co. *v.* Lippincott, 252 Pa. 112), we are not called upon to decide, as no such evidence was produced in this case. The statement of claim is not a part of the record (Buehler *v.* U. S. Fashion Plate Co., 269 Pa. 428), and even if it were, paragraph 8 of the statement of claim, which attempts to cover this point, is denied in the affidavit of defense in language which, by reason of the fact that the affidavit is made by an executor, is sufficient: McSorley *v.* Mamaux et al., Exec'rs, 28 Dist. R. 1010; Smyser *v.* Strawbridge, 4 D. & C. 297; Comerer *v.* Fraker's Admin'rs, 29 Dist. R. 491; Act of March 30, 1925, P. L. 84. Moreover, the statement of claim is sworn to by the plaintiff, an incompetent witness in this case.

Nor can the record in the prior suit in the Court of Common Pleas No. 5 be used to clarify the situation. It was offered for the purpose of proving a recovery against the principal and notice to the surety, which was the only purpose for which it could be used. The suit was between different parties; the testimony in that suit was exclusively that of the plaintiff in this case, who is an incompetent witness in the case at bar; the only other witness called by the plaintiff in the prior case being John M. Ouzounian, whose testimony was confined to the passing of a resolution by the corporation in the principal contract. Since surety contracts must be strictly construed to impose upon the surety only those burdens clearly within its terms, this contract is unenforceable.

Nor is there any merit to the plaintiff's contention that because this question was not raised at the trial and not included in the motion for a new trial, it is now too late.

In the case of Bayard *v.* Pennsylvania Knitting Mills Corp., 290 Pa. 79, 86, the Supreme Court said: "The authorities in other jurisdictions are in conflict as to the necessity of specially pleading the want of a proper writing to support the guaranty of the debt of another. In some, the defense has been held to be personal, which the defendant may or may not take advantage of, as in the case of the statute of limitations. In Pennsylvania this has not been declared, but it has been held that judgment should be entered for the defendant where the evidence shows the contract not to be legally sustainable. In Mason-Heflin Coal Co. *v.* Currie, 270 Pa. 221, 223, where a similar question arose under the Sales Act, it was said: 'The purpose of a statement is to set forth facts which show a claim "enforceable" by action; and it necessarily fails of this purpose unless they are averred.'"

The authorities are practically all agreed that in judgments founded on official bonds, bonds of indemnity, appeal bonds, etc., where, by the terms of the bond itself, the surety submits himself to the acts of the principal and to the judgment itself as a legal consequence following within the scope of the

suretyship, the surety is bound by a judgment recovered against the principal. And even in this class of bonds, in the case of Masser *v.* Strickland, 17 S. & R. 354, in which a constable's bond was involved, Chief Justice Gibson wrote a very forceful dissenting opinion.

The surety contract in this case clearly does not come within the above class of cases. The decedent did not contract to pay any judgment that might be recovered against the principal. The case most nearly resembling the instant case is that of Giltinan *v.* Strong, 64 Pa. 242.

In the cited case, the surety obligation was practically identical with the obligation of the decedent, and read as follows: "I hereby become surety for the rent of house in Strawberry Street at $1200 per annum, payable monthly from this date."

The lower court permitted a judgment against the principal to be admitted in evidence against the surety. The Supreme Court reversed the lower court, and Justice Agnew, in this case, used the following language: "But we think the court erred in holding that the record of the judgment against Maguire was competent evidence against Giltinan. If the liability is direct and primary, it is clear this is so, and if the writing is viewed as a mere undertaking of suretyship, still it was error; Giltinan was no party to that action, had no notice to defend it, and could not be brought into defense of it by the plaintiff. The plaintiff's remedy against him could be only on his own promise. A surety may give notice to his principal who owes him this duty to defend him, but it would be a novelty if the principal could call in his surety, who owes no such duty, to defend him. Giltinan was, therefore, in no sense either a party or privy to that action. Under the term *parties* (says Mr. Greenleaf in his Law of Evidence, paragraph 523), 'the law includes all who were directly interested in the subject-matter and had a right to make defense or to control the proceeding, and to appeal from the judgment. The right involves also the right to adduce testimony and to cross-examine the witnesses adduced on the other side. Persons not having these rights are regarded as *strangers* to the cause.' A surety in a separate and independent instrument is no party who could appear and control the separate action against his principal or appeal from the judgment. Nor is there a legal privity. *Privity*, says Mr. Greenleaf, paragraph 189, denotes mutual or successive relationship to the same right of property. In none of the classes enumerated, as in estate, in blood, and in law, does the case of a surety fall in reference to a creditor's *action*. It is the right to represent which creates privity in law as between ancestor and heir, decedent and administrator, etc., but clearly the principal, in an action against himself alone, cannot represent his surety. If he could, then he could bind his surety for an extinguished or paid debt by a confession or a default. The privity of the surety with his principal is in the contract alone and not in the *action*. For the acts or omissions of the principal to which the surety pledges himself in his contract, he is bound, and it is only in this respect the principal represents his surety. This is the criterion of the competency of the principal's declarations or admissions. Where these form a part of the acts or omissions of the principal for which the surety is bound, they constitute portions of the *res gestæ* and may be evidence against the surety. But beyond this line clearly the surety cannot be affected by the acts or admissions of his principal, for he is not represented by him: 1 Greenleaf's Ev., paragraph 187. The acts or omissions, or admissions of the principal in an action at law against himself, clearly do not represent the surety in any wise."

The only possible distinction that might be drawn between the above-cited case and the case under consideration is that in the cited case no notice was given to the surety, whereas in the instant case it might be argued that the surety would have notice, but a careful reading of the above opinion indicates that in this class of cases notice will not change the result. Judge Agnew distinctly uses the language that a surety may give notice to his principal who owes him the duty to defend him, but it would be a novelty if the principal could call in his surety who owes no such duty; that the defendant is in no sense either a party or privy to the action against the principal; that the defendant is a stranger to the cause, and that there is no legal privity. It is difficult to see how a stranger to a cause can be converted into a party by notice and how a legal privity can be created in that manner.

On the other hand, the instant case presents a stronger case for the defendant than the case of Giltinan v. Strong. The only evidence produced in the suit against the principal in the instant case was evidence which, while competent against the principal, might have been wholly or partly incompetent against the surety. Mrs. Thommen was the only witness produced by the plaintiff in the suit against Thommen's, Inc., and it is certainly difficult to see how a judgment founded on such testimony alone can be more binding on the defendant in this case than the competent testimony produced against the defendant in the cited case.

In the case of Lockard v. Vare, 230 Pa. 591, it was held: ". . . by the express words of clause (e), § 5, of the Act of 1887, she is not a competent witness, unless the matters to which she would testify occurred between her and the surviving partners. She was called for no such purpose. Her testimony was as to matters occurring in the lifetime of the deceased partner, and he, if living, might have contradicted her. His lips having been closed by death, evenhanded justice requires that her mouth be sealed: Karns et al. v. Tanner, 66 Pa. 297; but as to matters that occurred between her and the surviving partners, both may testify and there will be no inequality between them. Neither can have a vantage ground over the other under the right given them by the statute to testify to matters which occurred between them during the lifetime of the deceased partner."

The cases cited in the plaintiff's paper-book are all clearly distinguishable from the case in suit. Holmes v. Frost, 125 Pa. 328, was a suit on an indemnity bond in which the surety undertook to pay any judgment recovered.

The case of Com., to use, v. Fidelity and Deposit Co. of Maryland was a case involving an Orphans' Court bond, which comes under the classification of official bonds, bonds of indemnity and bonds to insure faithful performance of duty.

The other cases cited by plaintiff have very little bearing on the question involved in this case, nor are the cases from other jurisdictions very useful to throw any light on the subject, as there is a hopeless conflict of authority between the various jurisdictions on this question, and it is, therefore, necessary to be guided in this matter by the decisions of our own courts.

### Order.

And now, to wit, April 23, 1930, judgment non obstante veredicto is directed to be entered in favor of the defendant. Exception to this action of the court is noted for the plaintiff.

Rule for a new trial is discharged.