## City of Philadelphia v. Toner et al.

*F. F. Truscott*, city solicitor, for plaintiff.

*J. B. Martin*, *D. J. Colubiale* and *E. W. Furia*, for defendants.

GORDON, P. J., February 23, 1949.—This is an action on an indemnity bond brought by the City of Philadelphia against Katharine M. Toner, as principal, and the Manufacturers Casualty Insurance Company, as surety, on their undertaking to indemnify the city for any damage or loss it should sustain through the default of the principal.

Defendant was a clerk in the Philadelphia Hospital for Contagious Diseases, her duty, inter alia, being the collection of money from patients for hospital bills and the issuance of receipts therefor; and she was

employed in that capacity from May 1945 until May 13, 1947.

An audit of her accounts for the year of 1946 and the first half of 1947 disclosed that she had embezzled $2,593.89 in the former year, and an additional $2,049.56 during the half year from January 1, 1947, to June 30, 1947. These shortages were discovered in September of 1947 and the surety was immediately notified.

The indemnity bond on which suit was brought was in the amount of $1,000. No term was specified in the bond, but the premium for which it was issued was paid three times, that is to say, for the years 1945, 1946, and 1947. The bond also contained a provision to the effect that, if any damage or loss was sustained through any default of the principal, the affidavit of the director of public health "shall be final and conclusive upon us as to the amount of such damage or loss." In accordance with this provision, an affidavit was executed by the director of public health listing the shortages and stating that "deponent is of opinion that the said Katherine M. Toner misappropriated the amount representing the shortage."

Defendants admitted execution of the bond, the surety denied knowledge of any shortage, and demanded proof of the same. However, in her separate answer, defendant Toner admitted that she had misappropriated $300, her liability for that amount, and denied any other misappropriation.

The surety contends that it is not bound by the admission of default by the principal. We cannot agree with this contention. It is well settled that where a principal and surety are sued jointly, the admission of the former is competent and admissible against not only herself but also the surety: Commonwealth v. Kendig, 2 Pa. 448. Against this principle the surety cites Giltinan v. Strong, 64 Pa. 242. That

case, however, was not a joint suit against both the principal and surety, but against the surety alone, and the record of the judgment against the principal was introduced against the surety. In that situation the Supreme Court held the judgment against the principal was not admissible against the surety since it was not a party to the action against the principal in which the judgment was secured. Here, however, this suit is a joint suit on a joint obligation, and the admission of one of the parties is, in our judgment, competent evidence for all purposes against both.

The city proved its case by first offering Miss Toner's admission that she had been guilty of a misappropriation of at least $300, thus admitting an act of misappropriation covered by the bond, and then offered the affidavit of the director of public health as to the amount of damage suffered by the city, which, under the terms of the bond, was expressly made final and conclusive between the parties to it: Duquesne Brewing Co. v. Thomas, 207 Pa. 202; also American Surety Co. v. Pauly, No. 2, 170 U. S. 160.

The surety also contends that the wording of the director's affidavit, that "deponent is of the opinion that the said Katherine M. Toner misappropriated the amount representing the shortage", is not a factual finding to the effect that Miss Toner misappropriated the amount of the shortage. In support of this several cases are cited dealing with opinion evidence. We think, however, that the mere use of the word "opinion" in the affidavit did not give it the effect of opinion evidence. It was made in conformity with the requirement of the bond, and was clearly intended to be a factual statement. It would be "double talk" to suggest that the determination of a person, put in affidavit form, is something different from his "opinion" put in the same form. Such an argument does not lend itself to serious discussion.

The surety further contends that, in any event, its liability was limited to $1,000. This contention overlooks the facts that the full premium was paid for each year in which the principal defaulted, and that the city proved, by the affidavit of the director, that there was a shortage substantially in excess of $1,000 in each of them. In support of its contention, the surety cites Bradley v. Fidelity Casualty Co. of New York, 141 Pa. Superior Ct. 85. The terms of the bond in that case were different from those of the one before us. There the bond specifically provided that the company's "aggregate liability" should not exceed a specific amount, hence, the court held the liability could not be cumulative so as to exceed the specified amount. Such a provision is not contained in the present bond, and, as payment of the premium was renewed annually the conclusion is inescapable that the parties intended the bond to create a separate liability of $1,000 for each year for which payment of the premium was renewed. Otherwise, successive payments would be nothing more than ultra vires gifts of the city's money. A similar conclusion was reached in Aetna Casualty Insurance Co. v. Commercial State Bank, 13 Fed. (2d) 474, in which the court stated, on page 475:

"Here defendant paid an annual premium for insurance. Under plaintiff's theory, if there were a loss of $10,000 the first year, not discovered until the end of the three years' period, then, though defendant had paid premiums for the second and third years, it would have no protection for those years, no insurance, for the reason that the penalty of the bond would be completely exhausted by the first year's losses and nothing would remain to cover losses in the second and third years. In such case, the second and third years' premiums would be paid by defendant for nothing whatever. No sane man would say that this was the intention of defendant, and the court is most loathe to be-

lieve that it was the intent of plaintiff, a widely known insurance company, dependent upon the good will and esteem of the public and its customers for its commercial welfare, so to frame its contract of indemnity as to extract premiums from the insured without giving anything in return. Brief indeed would be its life of business prosperity and public esteem, were it known that it would be guilty of such a game of 'heads I win, tails you lose'. Rather than impute to it such an abhorrent suggestion of lack of commercial integrity and fair dealing, the court prefers to find as he believes the facts clearly indicate, that each year's premium was to buy one year's insurance of $10,000. There is no fact or circumstance warranting a finding that the parties intended that the first year's premium bought insurance of $10,000, but that the three years' premiums bought insurance of only $3,333⅓ per year."

The city asks judgment against defendant, Katherine M. Toner for $4,623.45, the full amount of the shortage proved against her, and against the surety for $2,000, the aggregate limit of the bond for each of those years. The suit, however, is upon the bond against both the principal and surety, and the liability of each under that instrument is necessarily the same.

Fundamentally, the bond is a form of security to the amount named in it for any default by the principal. Had she given security in the form of promissory notes for the same amount, recovery upon them would be limited to their value, regardless of how much greater the defalcation might have been. This does not, of course, prevent recovery from her in another action of the balance of her misappropriations.

Accordingly we will enter a finding and verdict in favor of plaintiff and against both defendants for $2,000, with legal interest from January 13, 1947, the prothonotary to compute the interest and add it to the principal of the verdict.