Statement of Facts.

## C. C. DUFFIELD v. F. P. HUE ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF WARREN COUNTY.

Argued May 8, 1890—Decided October 6, 1890.

[To be reported.]

1. Under a lease which grants to the lessee for oil producing purposes a certain described tract of land, with the exclusive right of boring for oil thereon, but restricts the operations of the lessee to certain specified sites, the lessee has no right of possession, such as will support ejectment, as to any land outside the designated sites: Duffield v. Hue, 129 Pa. 94.

2. The lessee, however, has the protection of the entire premises, and equity has jurisdiction to restrain the lessor, or others acting under him, from drilling wells thereon outside of such designated sites, and thereby lessening the production of wells drilled by the lessee, such injury being destructive of his rights and incapable of adequate remedy at law.

3. A court of equity may entertain a bill for an injunction against such an interference with the lessee's rights, notwithstanding that the boundaries of the demised premises are disputed, the defendant, who also is in possession under the lessor, denying that the land upon which he is drilling was included by the lessor in the leasehold granted to the plaintiff.

4. The lessor of an oil lease being dead, in a controversy between one who had succeeded to his title and an assignee of the lessee, as to whether the leasehold estate had been forfeited, the lessee and his assignee were incompetent, both before and after the passage of the act of May 23, 1887, P. L. 158, to testify to a waiver of forfeiture by the lessor.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 347 January Term 1890, Sup. Ct.; court below, No. 16 June Term 1886, C. P. in Equity.

On March 6, 1886, Charles C. Duffield filed a bill in equity against F. P. Hue and D. L. Gerould. The bill averred that on January 20, 1882, Thomas and H. W. Brown leased to one F. M. Pratt, for oil producing purposes, a part of tract 497 in Mead township, Warren county, which, however, by mutual mistake was described in the lease as part of tract No. 498.

A copy of the lease was appended to the bill as an exhibit, and its subject matter was thus described therein:

" All that certain lot or piece of land, situated in the township of *Mead*, county of *Warren*, and state of *Pennsylvania*, bounded and described as follows, viz., being a part of· tract number four hundred and ninety-eight, according to George O. Cornelius' survey, and containing an area of ——, according to a division of said tract into numbered sites made by first said party, *each site situated on lots numbered respectively on map, one hundred and fifty-one Mill street, one hundred and ninety-three Centre street, one hundred and sixty and one hundred and thirty-four on Elston street, and also sites for three wells situated per plat number one, south side of Philadelphia and Erie Railroad, to be designated and mutually agreed upon by both parties,* to have and to hold the said premises unto the said party of the second part, *his* executors, administrators and assigns, for and during the term of *fifteen* years from the date hereof, with the sole and exclusive right and privilege, during said period, of digging and boring for oil and other minerals on said lot, and of removing the same, together with the right to put up and keep tanks thereon, and such other buildings as may be necessary to the production, storage and transportation of oil and gas. *It is understood that this lease includes no land south of Robert Thompson's line; and further said party of the second part to have the privilege of drilling on premises hereinbefore mentioned other wells, if said first parties determine to have more wells drilled, at the same terms and conditions mentioned in this lease,* upon the following terms and conditions, viz.: " . . . . .

The words printed in italics were in writing in the original lease, the remainder of the foregoing extract being a printed form.

The bill averred, further, that Pratt, the lessee, entered in pursuance of the lease and drilled wells thereunder; that on December 16, 1883, by divers conveyances the plaintiff became the owner of the leasehold and entered into possession thereof, and thereafter he continued operations for oil thereon with the knowledge, consent and approbation of the lessors, and had upon the leased premises six producing wells, and was engaged in drilling a seventh, upon a location mutually agreed upon between the plaintiff and the agent of the lessors or their grantees. The bill then made the following charges:

Statement of Facts.

" 6. And your orator avers that said defendants, with full knowledge of the possession of your orator and of the terms and conditions of said lease, and of his sole and exclusive right and privilege of. drilling and boring for oil in said lot or land mentioned, and of his additional right and privilege of drilling other wells on said premises, should said lessors or their assignees or grantees so determine, under some pretended authority or right from said lessors or their assignees or grantees, as your orator is informed, have entered upon said land and premises and have located two wells and erected derricks and other buildings and structures thereon, and are drilling wells for the purpose of mining or producing oil therefrom, notwithstanding they were notified of the rights of your orator and ordered by him to desist and to leave said premises.

" 7. That said defendants have persisted and still continue to persist in their trespassing on said premises, and have a well near completion which, if said defendants find oil in paying quantities, will, from its location, interfere with and materially injure the wells of your orator on said premises, and decrease the productiveness of his said wells, and may likewise, by any carelessness on part of defendants or their employees, cause irreparable injury to your orator's wells, and irreparable loss and injury to your orator's leasehold, and cause him to suffer such damage as cannot be estimated.

" 8. Your orator further avers that the said defendants are trespassing upon his premises to the great and lasting injury of his estate therein and rights and property and contrary to law, and that unless defendants desist he has well founded reason to apprehend great injury and damage to his leasehold and its value to him ; that the trespasses committed by defendants and the injury likely to result therefrom are liable to cause him irreparable injury, and such as will be permanent in its nature and character and be productive of lasting waste, and for all which there is no adequate remedy at law."

The prayers for relief were : For an injunction restraining the defendants from further drilling the wells commenced by them, and from further operating for oil upon the premises leased to the plaintiff, or interfering with his possession and enjoyment thereof; for an account for all waste committed by the defendants upon said premises, and a decree that the pro-

ceeds of all oil which the defendants might obtain from said premises, prior to final decree, be paid to the plaintiff ; and for general relief.

The defendants filed an answer to the bill admitting the lease from the Browns to Pratt and the mistake of description therein, mentioned in the bill, but averring upon information that any rights acquired by the plaintiff thereunder had been forfeited by reason of a failure to perform conditions therein contained ; denying that defendants were drilling upon premises embraced in said lease, and averring that the wells which the defendants were drilling were located upon two acres of ground which formed no part of the Pratt lease, but were leased to the defendants on January 16, 1886, by Lewis Rosenzweig ; and averring that the plaintiff had an adequate remedy at law for injuries that might result from any carelessness in the operation of the defendants' wells.

Issue having been joined, the court on April 5, 1886, appointed *Mr. D. I. Ball,* examiner and master, who subsequently reported in part as follows :

We are met at the threshold of this case with the question of jurisdiction. The defendants did not demur to the plaintiff's bill, but " at all times saving and reserving to themselves, and each of them, all benefit and advantage of exception which can or may be had to the many errors, uncertainties, and other imperfections in the said plaintiff's bill contained," they proceeded to answer the plaintiff's bill at length, and after replication the cause was proceeded with by testimony on both sides and argument before the master. Upon the argument, the defendants strenuously urged the want of jurisdiction in a court of equity to determine the questions raised by the plaintiff's bill.

The question of jurisdiction may be raised at any stage of the proceedings : Musselman's App., 101 Pa. 165. While this is true, the court will not permit an objection to its jurisdiction to prevail, in doubtful cases, after the parties have voluntarily proceeded to a hearing on the merits, but will administer suitable relief: Adams's App., 113 Pa. 449. And it seems this jurisdiction is to be determined by what appears on the face of the plaintiff's bill : Adams's Appeal, supra. If it be reasonably clear that a court of equity has no jurisdiction of the plaintiff's

cause, then the court ought not to entertain it, and even the legislature could not clothe a court of equity with power to hear it, or deprive the defendants of their right to have a jury pass upon controverted questions of fact: North Penna. Coal Co. v. Snowden, 42 Pa. 492; Tillmes v. Marsh, 67 Pa. 508; Norris's App., 64 Pa. 275; Haines's App., 73 Pa. 169. It is settled beyond controversy that if the plaintiff's bill be but an ejectment bill, the court of equity has not jurisdiction, and the bill should be dismissed: Tillmes v. Marsh, supra; Long's App., 92 Pa. 171; Messimer's App., 92 Pa. 168; North Penna. Coal Co. v. Snowden, supra; Gloninger v. Hazard, 42 Pa. 389; Washburn's App., 105 Pa. 480; Schlecht's App., 60 Pa. 172.

What, then, is the character of the grievance alleged by the plaintiff? The sixth and seventh paragraphs of his bill charge the wrongs and injuries, alleged to be committed by the defendants, for which he seeks redress in this court as follows: . . . . .

The sixth paragraph shows more than repeated and continued trespass; it shows an open, adverse and continued possession, and occupancy, and use of the premises by the defendants, under a claim of right from the plaintiff's lessor, in spite of the demand of the plaintiff upon them to desist and leave the premises. The trespassing, alleged in the seventh paragraph, is merged in the possession and occupancy already shown, and adds nothing more to the facts to be weighed in considering the question of jurisdiction.

Upon the face of the bill, a declaration in ejectment may be drawn. It sets forth the title in the plaintiff to the land in dispute, and his right to the possession thereof, and shows what is in fact an adverse occupancy of the same by the defendants. What does it signify that the plaintiff calls it trespassing, when he shows the act complained of to be an actual, open, continuous, indivisible, adverse and hostile possession and occupancy? In his own language, " they have entered upon said land and premises, and have located two wells, and erected derricks, and other buildings and structures thereon, and are drilling wells for the purpose of mining or producing oil therefrom. . . . . That said defendants have persisted and still continue to persist in their trespassing on said premises, and have a well near completion." Clearly, so far, the plaintiff shows a wrong which

can be remedied by an action of ejectment, and for which that action is the only remedy.

The further allegations contained in the seventh paragraph and the averments of the eighth paragraph are not sufficient to give jurisdiction. With the exception of the allegation of waste, the consequences of putting down these wells would be incident to any well drilled by the owner upon land adjoining plaintiff's lease, and close to any of his wells. I have never heard of any remedy at law being invoked for any injury sustained because of a well drilled close to the line upon the land of an adjoining owner. It is possible some injury might arise from the negligence or careless use or mismanagement of such a well to the owner of adjoining oil territory, for which the law might furnish a redress, but when can a court of equity intervene to prevent apprehended injury from carelessness of owners or employees in the management of oil wells upon adjoining lands, while prosecuting the business of producing oil in the usual and ordinary manner? Nothing else is made to appear upon this branch of the case, except that the land, upon which these operations are carried on, is in dispute between the plaintiff and defendants under what the plaintiff calls a "pretended" claim of right. The diminution in the production of oil to one person from the well of another, close to the boundary line, furnishes no ground for either a legal or equitable remedy.

One more element of the plaintiff's case upon the subject of jurisdiction remains for consideration, the question of waste. Whatever oil may be taken by the defendants from the disputed premises is so much taken from the corpus of the estate. But is the taking of it, in the manner charged, such waste as to give jurisdiction to a court of equity? In Grubb's App., 90 Pa. 234, it is said that "waste is spoil or destruction done or allowed to be done to houses, woods, lands or other corporeal hereditaments by the tenants thereof, to the prejudice of the heir, or of those in reversion or remainder." See also Denny v. Brunson, 29 Pa. 382. The injuries complained of do not seem to come within that technical meaning of waste, which courts of equity have jurisdiction to restrain the commission of. But it was well argued before the master, that, from the nature of oil and the character of oil lands, courts of equity are called upon to exercise their efficient powers to protect the owners of that kind of

property from injuries to their estate in the nature of waste. These considerations have moved the legislature to apply more effective remedies for this kind of property. Those remedies, however, do not affect our question of jurisdiction. The Supreme Court have said, when appealed to upon these considera-tions, " We can draw no distinction between a farm and an oil well." . . . . . "It may be that the peculiarity of the property in an oil well is such that an injunction to stay waste, or a writ of estrepement, will not be an adequate remedy for an owner out of possession. But that will not authorize a court of equity to assume jurisdiction to try the title upon what is merely an ejectment bill, and thus, in effect, deprive the parties of their constitutional right of trial by jury : " Enterprise Transit Co.'s App., 9 W. N. 227.

Allison's App., 77 Pa. 221, is confidently cited by the plaint-iff as an authority for maintaining this bill. At the first blush, it appears to go the full length of sustaining all that the plaint-iff asks for. Upon a closer examination, I think it is distin-guishable from this case. In that case, the plaintiff had a lease for oil purposes of three acres and one hundred and twenty-three perches of land. The lease contained the following stipulation : " And it is further agreed between said parties that there are ten rods of protection on the east side of said lease, also protection on the north side eight rods to orchard fence." At the point at the corner of this lease where the lines of this protection met, a subsequent other lessee of this lessor bored an oil well. The bill filed was for an injunction restraining the further operation of this well and for an account of the oil produced, both of which were sustained by the Supreme Court. It is apparent that while Evans and Allison had a right to the " protection " provided by their lease along the sides of their leasehold, and that no other person should operate thereon for oil, they had no right to the possession of it. Without a right of possession they could not maintain ejectment, which is founded upon the right of possession. The " trespass " mentioned by Justice WILLIAMS, at page 227, would seem to be the tort arising from the violation of the terms of the lease by the lessor or parties under him. This being so, equity was the only adequate remedy for Evans and Allison. If I am correct in this analysis of that case, then Allison's Appeal is not an authority to govern this case.

Master's Report.

If we turn to the defendants' answer, there is nothing to help the plaintiff out on the question of jurisdiction. On the contrary, the answer contains a square denial of the plaintiff's rights in the land in question.

For the foregoing reasons, I am constrained to recommend to your Honors the dismissal of the plaintiff's bill. In doing so, it is proper that some portion of the costs made with and since the filing of the answer should be paid by the defendants, since, instead of demurring to the plaintiff's bill, they answered it and proceeded to proofs and final hearing. The plaintiff might well suppose that under such circumstances they accepted his challenge in the tribunal he had selected. If he made a mistake in his selection, they contributed to it in the proceedings subsequent to the filing of the bill, by their answer. I think they have no just cause for complaint if they are let off with one half the costs, beginning with and subsequent to the filing of their answer; and I think in compliance with approved practice they should in the first instance pay all the costs, with a right to collect over from the plaintiff all but the one half above indicated: Thomson's App., 11 W. N. 414; Lowenstein v. Biernbaum, 8 W. N. 301; Girard N. Bank's App., 13 W. N. 102; St Joseph's Orphan Asylum's App., 38 Pa. 535.

I might with propriety consider my duties as master as ending here upon preparing a decree. But if in the subsequent prosecution of this case, I should be convicted of error in recommending a dismissal of the bill, it is right to the parties and to the court that I pass upon all the questions raised by the pleadings and evidence in the case. . . . . .

By lease dated January 20, 1882, Thomas Brown and Henry W. Brown executed to F. M. Pratt the lease set forth in full by plaintiff as exhibit A to his bill. It is admitted that the number of the tract described in the lease as 498, is in fact 487, and that the title and possession of the Pratt lease is in C. C. Duffield, the plaintiff, and was at the time of bringing this suit, subject to the terms and conditions of the lease. It is further admitted that the Elston leasehold, of which the premises in question form a part, was sold by the sheriff to L. Rosenzweig upon certain writs of execution issued upon the judgments given in evidence against Thomas Brown, and Thomas Brown and others, doing business as Brown Brothers

Master's Report.

& Co., and that the title of the Browns in the Elston lease was in L. Rosenzweig, at the time of the execution of the lease to Hue and Gerould, the defendants.  This later lease bears date January 16, 1886, and is for about two acres of land, which the plaintiff claims is included in the Pratt lease, and which the defendants deny.  Both parties therefore claim from the same source of title, and one of the questions they present to me is the construction of the Pratt lease as to the extent of the territory covered by it. . . . .

—The master then found that upon a proper construction of the description in the Pratt lease, it embraced, not only the sites designated for wells, but the whole, of the tract embraced in the lease as far as the line of the Robert Thompson land mentioned therein, and therefore included the two acres, known as the mill lot, claimed by the defendants, and proceeded :

The defendants further contend that the plaintiff, under the terms of his lease, forfeited all rights under the lease, except to the six wells drilled on six of the sites mentioned therein, because the seventh well was not drilled within the time required by the lease.  The consideration of this question of forfeiture requires the determination of the competency of certain witnesses who testified upon the subject, and in this connection I will consider the questions raised as to the competency of the witnesses, F. M. Pratt, C. C. Duffield, L. Rosenzweig and Thomas Brown, generally, under the act of May 23, 1887, P. L. 158.

The testimony in chief of the plaintiff was taken prior to the passage of said act, and the remaining testimony was taken after its passage, and the case argued before the master after the act went into effect.  There were eighty-two pages of testimony taken prior to the time when the act went into effect on July 1, 1887.  The act, by the terms of § 12, applies to the testimony taken before its passage, as well as to that taken after the act went into effect and while the proceedings were pending and undetermined.

H. W. Brown, one of the plaintiff's lessors, died before the beginning of this suit.  The time of his death does not appear in the evidence, but it was before number seven well was drilled, and apparently about the time of the sheriff's sale. How does his death affect the competency of the witnesses

named? Clause (*e*), § 5, of the act of May 23, 1887, provides: " Nor where any party to a thing or contract in action is dead, . . . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be *adverse* to the said rights of such deceased . . . . . party, be a competent witness to any matter occurring *before* the death of said party." This act does not exclude any witness from testifying to matters occurring since the death of the party to the thing or contract, nor to transactions occurring between the surviving partner to the thing or contract; and apparently it does not exclude any one not a party to the thing or contract, although interested, from testifying in favor of the interest of the deceased party. It does exclude parties to the thing or contract, or who have an interest adverse to the deceased party, from testifying to any matter occurring before the death of such party. These rules manifestly exclude Mr. F. M. Pratt, Mr. C. C. Duffield, the plaintiff, and Mr. Thomas Brown, a witness for the defendants, in so far as their testimony relates to matters taking place anterior to the death of H. W. Brown; as to anything since that event they are competent. The act does not exclude Mr. Rosenzweig's testimony, as his connection with the lease and the subject matter of his testimony are subsequent to the death of H. W. Brown.

—Recurring to the question of forfeiture, raised by the defendants, the master reported, in substance, that the plaintiff's rights under his lease, except as to the wells drilled and a proper amount of territory in connection with each of them, to be set off by the lessor in accordance with its stipulations, had been forfeited by a failure to comply with certain conditions thereof. He therefore reported, recommending a decree dismissing the plaintiff's bill, without prejudice to his right to prosecute a suit at law, and directing that the costs be paid in the manner suggested in the previous part of his report.

The plaintiff filed exceptions to the report, alleging that the master erred: 1. In excluding the testimony of Pratt and the plaintiff.[1]  2. In not finding that the forfeiture of the plaintiff's lease was waived and suspended.[2]  3. In holding that a court of equity had no jurisdiction under the facts proved.[3]

Arguments.

On June 25, 1888, the exceptions having been argued, they were dismissed by the court and a final decree entered dismissing the plaintiff's bill and directing the costs to be paid as recommended by the master.* Thereupon in March, 1890, the plaintiff took this appeal, specifying that the court erred:

1–3. In dismissing the plaintiff's exceptions.[1 to 3]

4. In dismissing the bill for want of jurisdiction.

*Mr. Samuel T. Neill*, for the appellant:

1. The real and only question raised upon this record is that of jurisdiction. The dismissal of the bill was recommended by the master, and ordered by the court, solely upon the ground that it was an ejectment bill. The plaintiff was then driven to an action of ejectment, which this court decided in Duffield v. Hue, 129 Pa. 94, could not be maintained, intimating that the plaintiff had a remedy in another form. To obtain that remedy, this appeal is taken. The plaintiff's lease, in plain terms, granted the exclusive right to the oil under the whole lot of which the Robert Thompson line was the southern boundary, although it gave no right to the possession of any of the surface, except the parts necessary for the drilling of the seven wells through which the oil was to be taken out. The fact that the defendants have adverse possession of the surface of the two acres, does not interfere with the jurisdiction of equity to restrain the drilling of wells thereon, which would create waste upon the plaintiff's oil right, and produce damages to him incapable of measurement: Allison's App., 77 Pa. 221; Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235.

2. There is an additional reason for invoking the aid of

---

*Acting upon the suggestion of the master and the court below, that his remedy, under the averments of his bill, was at law and not in equity, Duffield brought ejectment against Hue and Gerould, on July 18, 1888, for the two acres claimed by them. In that action, the court, in pursuance of a submission under the act of April 22, 1874, P. L. 109, rendered judgment for the defendants. On writ of error to No. 455 January Term 1889, Sup. Ct., the judgment was affirmed in an opinion by Mr. Justice CLARK, holding, among other things, that ejectment could not be maintained by Duffield, inasmuch as his lease gave him no right of possession except at the sites for wells therein mentioned: Duffield v. Hue, 129 Pa. 94. This appeal from the decree in the equity case was not taken until after the decision of the Supreme Court, in the ejectment suit, was rendered.

equity. There is an express covenant in the lease held by the plaintiff, that any additional wells drilled upon the leased premises should be drilled by the lessees, and this covenant was clearly intended to protect their wells against the drilling of any wells by the lessors, or others claiming through them, upon the land of which the defendants are in possession. The covenant was binding upon Rosenzweig and the defendants, as well as upon the Browns; and equity has full jurisdiction to restrain the violation of such a restrictive covenant: Brightly's Eq., §§ 294, 295; Stewart's App., 56 Pa. 422; Scott v. Burton, 2 Ashm. 325; Allison's App., 77 Pa. 221. The question of forfeiture does not properly arise on this record, but the ruling of the master upon it was clearly erroneous. He disregarded competent testimony which should have led him to a different conclusion, and he erred in treating the forfeiture clause in the lease as self-acting: Wills v. Gas Co., 130 Pa. 222; Hoch v. Bass, 126 Pa. 13. Moreover, even if the plaintiff's right to drill the seventh well was forfeited, he was entitled by the terms of the lease to protection for the wells already drilled.

3. As to the competency of Pratt and Duffield, we do not ask the court to review its decision in Duffield v. Hue, 129 Pa. 94; but that decision was based upon the act of May 23, 1887, P. L. 158, and these witnesses testified in chief in this case before that act was passed. Besides, the purpose for which we seek to use their testimony here, is not the same as in the other case. If we were now seeking by it to reform the original contract, what was said in Duffield v. Hue, supra, would be applicable. But such is not the case. The defendants allege a failure of the plaintiff to comply with the strict terms of the lease, and set up a forfeiture resulting therefrom to themselves. Our offer to show waivers of strict compliance by Rosenzweig, and by the Browns when they were the owners of the property, was not in any sense adverse to Henry Brown's interest, and in no way affected his estate or any one but the defendants. They were claiming that the ground in controversy was not included in the contract between Pratt and the Browns, and had no standing to object. Pratt was a competent witness under the act of April 15, 1869, P. L. 30: Warren v. Steer, 112 Pa. 634; and we contend that he would have been such even prior to that act.

*Mr. Charles Dinsmoor* (with him *Mr. James Cable* and *Mr. Charles A. Peterson*), for the appellees:

1. The plaintiffs' bill is clearly an ejectment bill and discloses no ground for equitable relief. The record exhibits simply a contest over the legal title to the ground in the possession of the defendants. The charges in the bill of continuing trespasses in the drilling for oil, add nothing to the plaintiff's case. Such business does not consist of a series of entries, but of an actual, continuous, visible and adverse possession. Upon his own showing, the plaintiff can have no remedy except by an action at law to determine the title: Washburn's App., 105 Pa. 480; Long's App., 92 Pa. 171; Schlecht's App., 60 Pa. 172; Tillmes v. Marsh, 67 Pa. 507; Enterprise Transit Co.'s App., 9 W. N. 227.

2. Of Allison's App., 77 Pa. 221, and Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235, upon which the plaintiff relies, it is sufficient to say that in those cases the title of the lessees was indisputable, and the rights invaded, or sought to be invaded, were incorporeal, or at least such as gave no right to the possession of the land out of which they sprang. The plaintiff attempts to bring this case within the two last mentioned, by setting up some kind of easement in the two-acre lot, under the clause in the lease giving the lessee the privilege of drilling any additional wells which the lessors might determine upon. The court below, in the ejectment case, affirmed a point to the effect that this clause is not a covenant running with the land, and this ruling was not reversed or discussed when that case came before this court in Duffield v. Hue, 129 Pa. 94. The clause in fact, is but a personal covenant binding only the lessors. It certainly does not bind one who came into possession of the lessor's rights by adverse legal process, as Rosenzweig did: National Transit Co. v. Weston, 121 Pa. 485. The other matters assigned for error and discussed by the appellant's counsel, are ruled by Duffield v. Hue, 129 Pa. 94.

OPINION, MR. JUSTICE CLARK:

The main question in this case is one of jurisdiction. The plaintiff's bill was dismissed upon this ground alone, and, as all matters affecting the merits were dependent upon the question of jurisdiction, they fell with it, and were not considered.

Opinion of the Court.

It is contended, and the learned judge of the court below was of the opinion, that, for the injuries complained of in the bill ejectment was the proper remedy, and the bill was dismissed as an ejectment bill. In this we think the learned court erred, for we cannot see how it was possible for the plaintiff to have maintained ejectment for the premises in dispute. Under the terms of the contract of 20th of January, 1882, neither Pratt nor his assignees were entitled to actual possession of the mill-yard, and, without the right of possession, ejectment could not be maintained. In Duffield v. Hue, 129 Pa. 94, which was an ejectment between the same parties for the same land, this contract was brought before us for construction, and we there held that ejectment could not be maintained. We there said:

" Whilst, by the printed form, the leased premises are described as 'a certain lot or piece of land, situate,' etc., it is plain from the written clauses that the premises were to be operated at certain designated points or sites only. These sites are specifically described as follows : ' Each site situated on lots numbered, respectively, on map, one fifty-one Mill street, one ninety-three Centre street, and one sixty and one thirty-four on Elston street; and also sites for three wells, situated per plot number one, south side of Philadelphia & Erie Railroad, to be designated and mutually agreed upon by both parties.' The rights of Pratt as lessee for oil-mining purposes are plainly restricted to these sites. It is provided that he is to have the privilege of drilling other wells on the same premises only in the event that the Browns might determine to have more wells drilled, and then the operations were to be conducted on the same terms. Whilst the lease, in some sense, may be said to cover the entire lot for oil-mining purposes, yet it is plain that operations were restricted to the sites mentioned. Whatever oil might be produced from the premises leased at these points, the lessees had a right to produce ; but they had no right of possession, for any purpose, at any other place within the bounds of the territory described. If the lessors, or others acting under them, by boring other wells, lessened this production, or otherwise disturbed or interfered with the rights of the lessees, they may have had their remedy, but not in this form ; for by no construction of the contract in question can Pratt be supposed to have had any right of possession, for any purpose,

in any part of the premises in dispute; and Duffield, in his right, has therefore no standing to recover in ejectment."

As the decree in this case was entered before the final judgment was given in Duffield v. Hue, supra, the learned judge did not have our construction of this contract before him, and, as he appears to have adopted a different construction of the contract, he arrived at a different conclusion as to the remedy to be pursued.

It is plain that in some sense the whole land is embraced in the lease, for the description covers the whole. The lease is of "a certain lot or piece of ground situate," etc., " being part of a tract number four hundred and ninety-eight (497) according to George O. Cornelius' survey, and containing an area of—, according to the division of said tract into numbered sites," etc. The grant is of the sole and exclusive right and privilege, during said period, of digging and boring for oil and other minerals "on said lot," etc., which, however, "includes no land south of Robert Thompson's land," etc; the party of the second part to have the privilege of drilling other wells "on premises hereinbefore mentioned, if," etc. It is equally plain, however, notwithstanding the lease covers the whole, that the actual possession or occupancy for oil production is confined to certain "sites," for the sites are particularly specified, and, in a certain contingency, others provided for. Pratt, the lessee, although thus limited in his actual operations, had the protection of the entire premises, and the privilege of extending his operations within the limits of the lease as the lessors might determine. The right was "exclusive," by the express words of the contract, and was confined to these sites, unless " the first parties determined to have more wells drilled, in which case the parties of the second part have the privilege of drilling them on the same terms and conditions mentioned." The complaint is not that the defendants have invaded the possession of the plaintiff, nor that they have entered at any point where the plaintiff is entitled to possession, but that they are interfering with the plaintiff's exclusive right to the oil.

The sixth and seventh paragraphs of the bill are as follows:

"6. And your orator avers that said defendants, with full knowledge of the possession of your orator and of the terms

and conditions of said lease, and of his sole and exclusive right and privilege of drilling and boring for oil in said lot or land mentioned, and of his additional right and privilege of drilling other wells on said premises, should said lessors or their assignees or grantees so determine, under some pretended authority or right from said lessors or their assignees or grantees, as your orator is informed, have entered upon said land and premises and have located two wells and erected derricks and other buildings and structures thereon, and are drilling wells for the purpose of mining or producing oil therefrom, notwithstanding they were notified of the rights of your orator, and ordered by him to desist and to leave said premises.

" 7. That said defendants have persisted, and still continue to persist, in their trespassing on said premises, and have a well near completion, which, if said defendants find oil in paying quantities, will, from its location, interfere with and materially injure the wells of your orator on said premises, and decrease the productiveness of his said wells, and may likewise, by any carelessness on the part of the defendants or their employees, cause irreparable injuries to your orator's wells, and irreparable loss and injury to your orator's leasehold, and cause him to suffer such damage as cannot be estimated."

The defendants, having taken possession of the mill site for the purpose of boring for oil, could not be dispossessed by ejectment, nor was trespass an adequate remedy. It was, without doubt, proper for the plaintiff, if his claims are justified by the proofs, to resort to equity for redress. The injury threatened was of a permanent nature, and destructive of his rights under the Pratt lease. The damages anticipated were incapable of measurement at law. The court below had undoubted jurisdiction for the prevention and restraint of the defendants, and for redress of the injuries suffered: Allison's App., 77 Pa. 221; Westmoreland N. Gas. Co. v. DeWitt, 130 Pa. 235.

As to the incompetency of Pratt and Duffield to testify as witnesses for the plaintiff as to matters occurring in the lifetime of Brown, there can, we think, be no serious question; they were incompetent under the act of 1887: Duffield v. Hue, supra, and it is equally clear that they were incompetent

prior to that act, under the ruling of Karns v. Tanner, 66 Pa. 297.

For the reasons already stated,

The decree of the Common Pleas is reversed, and the record remitted for further proceeding, the appellee to pay the costs of this appeal.